NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FABIAN BUCHANNON,<br><br>                Plaintiff,<br><br>v.<br><br>NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,<br><br>                Defendant. | Civil Action No.: 21-7467<br><br>OPINION |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on defendant New Jersey Transit Rail Operations, Inc.'s ("NJT" or "Defendant") motion for summary judgment (ECF No. 42-1, "Mot."). Plaintiff Fabian Buchannon ("Plaintiff") opposed Defendant's motion (ECF No. 45, "Opp."). NJT replied in support of its motion (ECF No. 46, "Reply"), and Plaintiff filed a sur-reply (ECF No 49, "Sur-reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is **DENIED**.

II. **BACKGROUND**[1]

This dispute arises out of Plaintiff sustaining personal injuries on April 2, 2018, while he was working for NJT at the Meadows Maintenance Complex ("MMC"). Pl. RSMF ¶ 2. At the time of the incident, Plaintiff was working the assignment known as MM-50, which involved

---

[1] Background facts are taken from the pleadings, evidence, and parties' affirmative and responsive statements of material fact, pursuant to Local Civil Rule 56.1. *See* Defendant's Statement of Material Facts, ECF No. 42-2 ("Def. SMF"); Plaintiff's Counter Statement of Material Facts, ECF No. 45 ("Pl. CSMF"); Plaintiff's Response to Defendant's Statement of Material Facts, ECF No. 45 ("Pl. RSMF"); and Defendant's Response to Plaintiff's Counter Statement of Material Facts, ECF No. 46-6 ("Def. RCSMF").

moving locomotives within the MMC. *Id.* ¶¶ 3–4. Plaintiff was part of a two-person train crew including himself as the conductor, and Daniel Bambacko as the Locomotive Engineer. *Id.* ¶¶ 5, 7. Their work required travel through the Wash House, which was a building with "close clearances" when equipment passed through it. *Id.* ¶¶ 7–8, 14.

According to Plaintiff, Yard Foreman David Castro was the supervisor the day of the incident, and thus was responsible for delivering the safety briefing required under NJT Safety Rules. Pl. CSMF ¶¶ 9–10. Plaintiff alleges such safety briefing never occurred. *Id.* ¶¶ 9–11. Shortly before 9:15 p.m., Plaintiff and Bambacko began moving Locomotive 4914. *Id.* ¶ 16. Plaintiff states that he gave instructions to Bambacko to move the "consist" (four locomotives hitched together) so that he could board the train. *Id.* ¶ 22. Once the consist stopped, Plaintiff climbed up the "ladders" (*i.e.*, the steps and grab irons) and attempted to open the cab door, but it only opened a few inches. *Id.* ¶¶ 22–26. As he attempted to open the door, Plaintiff told Bambacko to start moving the consist once again. *Id.* ¶ 25. With the locomotive now moving, Plaintiff tried to open the cab door again, but it "snapped back" towards him after rebounding off the reclined engineer's seatback blocking the door. *Id.* ¶¶ 27–30. Plaintiff claims this "snap back" movement caused the door to hit him in the head, lose his grip, and fall from the locomotive. *Id.* ¶ 31. Plaintiff alleges that he did not make contact with anything inside the Wash House until after he fell. *Id.* ¶¶ 32–34. Plaintiff sustained a concussion, a fractured spine, bulging discs, nerve damage, lacerations on his back and head, and required thirteen stitches. *Id.* ¶¶ 35–36. Plaintiff returned to work almost one year later without any disciplinary action. *Id.* ¶ 80.

Defendant claims that as the conductor, Plaintiff oversaw the relevant operations at the time of the incident. Def. SMF ¶ 10. Defendant argues that Plaintiff gave the order to Bambacko to begin moving the locomotive while Plaintiff was still on the side of Locomotive 4914 and *before*

he tried to open the engineer's door—violating NJT Safety Rules. *Id.* ¶¶ 19–20. Defendant states that Plaintiff also violated NJT Safety Rules because he was riding on the side of the locomotive in a close clearance area, the Wash House. *Id.* ¶ 21. Defendant denies the door snapped back on Plaintiff and instead claims that the engineer's door had a window, from which Plaintiff could have seen whether the seat was indeed blocking the door. *Id.* ¶¶ 18, 23. Defendant also emphasized that the engineer's seat was designed to be placed in a reclined position, as it was the day of the accident. *Id.* ¶ 30.

At the time of the incident, Defendant alleges that Locomotive 4914 was out of service and undergoing a scheduled 92-day periodic inspection and repair to its radiator. *Id.* ¶ 37. The locomotive was being moved for further testing because the repairs were not completed until April 5, three days after the incident in question. *Id.* ¶¶ 37–39. Plaintiff, however, alleges that Locomotive 4914 was being moved in preparation for a yard crew to connect the locomotive to passenger cars and leave the MMC yard, and denies the locomotive was undergoing inspection or repair at the time of the incident. Pl. RSMF ¶ 37.

On March 31, 2021, Plaintiff commenced this action against NJT seeking damages under the Federal Employers' Liability Act ("FELA") and the Federal Locomotive Inspection Act ("LIA"). ECF No. 1. Presently before the Court is Defendant's motion for summary judgment. As discussed above, Plaintiff opposed, Defendant replied, and Plaintiff filed a sur-reply.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact (Fed. R. Civ. P. 56), and, construing all facts and inferences in a light most favorable to the non-moving party, "the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has satisfied this burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[ ] the 'mere scintilla' threshold. . . ."). An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendant moves for summary judgment on the issues of NJT's negligence, whether Plaintiff was the sole cause of the incident, and the LIA's applicability in this matter.[2] For the reasons set forth below, the Court finds that Plaintiff has raised genuine issues of material fact regarding each of these issues. Accordingly, Defendant's motion for summary judgment is denied.

### A. NJT'S NEGLIGENCE UNDER THE FEDERAL EMPLOYERS' LIABILITY ACT

FELA imposes liability on railroads for injuries to their employees. 45 U.S.C. § 51, *et seq.*[3] To present a *prima facie* case under FELA, a plaintiff must prove: (i) "the defendant is a common carrier by railroad engaged in interstate commerce"; (ii) the plaintiff was "employed by the defendant and assigned to perform duties which furthered such commerce"; (iii) the plaintiff's "injuries were sustained while they were employed by the common carrier"; and (iv) the plaintiff's

---

[2] In its Reply, Defendant argues that Plaintiff has "abandoned his claim as set forth in the Complaint and now attempts to advance a separate and new theory of liability without an amendment to the pleading." Reply at 2. The Court rejects this argument for two reasons. First, Defendant failed to raise this argument in its initial moving brief, instead improperly raising it in its Reply. *See, e.g.*, *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) (refusing to "reach arguments raised for the first time in a reply brief"). Second, the Court agrees with Plaintiff that the two "theories"—whether the door itself was defective, or whether the engineer's seatback blocking the door created a defect or insufficiency—do not constitute separate claims or causes of action such that amendment is necessary. *Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, No. CIV.A. 07-2919, 2008 WL 5003032, at *9 (E.D. Pa. Nov. 25, 2008) (finding amendment of the complaint unnecessary when plaintiff was "not seeking to assert a new, legally distinct cause of action"); *Maldonado-Torres v. Customized Distribution Servs., Inc.*, No. CV 19-0400, 2020 WL 5645686, at *12 (E.D. Pa. Sept. 21, 2020).

[3] 45 U.S.C. § 51 states, in relevant part:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence. . . ."

5

"injuries resulted from the defendant's negligence." *Felton v. Se. Pa. Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991). A "[p]laintiff must prove the elements of a common law negligence action: duty, breach, foreseeability, and causation." *Tramontano v. N.J. Transit Rail Ops., Inc.*, No. CV145706, 2023 WL 3248238, at *19 (D.N.J. May 4, 2023) (citation omitted). Importantly, "an employee's contributory negligence will not bar him or her from obtaining relief [under FELA] and may only be considered to diminish the employee's recovery of damages in proportion to his or her fault." *Tozzi v. Port Auth. Trans-Hudson Corp.*, No. 2:21-CV-08727, 2023 WL 3614582, at *3 (D.N.J. May 24, 2023); 45 U.S.C. § 53.

A railroad breaches its duty of care when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. *Atchison Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987); *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 352 (1943); *Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 67 (1943); *Tramontano*, 2023 WL 3248238, at *19. In other words, a railroad breaches its duty when it knew, or by the exercise of due care, should have known, that its operations were inadequate to protect its employees. *Urie v. Thompson*, 337 U.S. 163, 178 (1949); *Tramontano*, 2023 WL 3248238, at *23. A FELA plaintiff "must show that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury and had, or should have had, some knowledge of the unsafe condition." *Bruce v. Norfolk S. Ry. Co.*, No. CV 19-476, 2022 WL 510552, at *3 (W.D. Pa. Jan. 3, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, No. 2:19-CV-476, 2022 WL 1774046 (W.D. Pa. Feb. 22, 2022).

At the summary judgment stage, the test for causation is whether the employer's "negligence played any part, *even the slightest*, in producing the injury or death for which damages

6

are sought." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (emphasis added); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir. 1991). "[A] trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a *zero probability* either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic*, 430 F.2d at 699–700 (emphasis added). Significantly, "a FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." *Hines*, 926 F.2d at 268 (citing *Pehowic v. Erie Lackawanna R.R.*, 430 F.2d 697 (3d Cir. 1970)).

Defendant argues that Plaintiff has not established a *prima facie* case under FELA because there is no evidence that NJT breached its duty of care to provide him with a safe place to work or that NJT contributed to the accident. Instead, Defendant asserts that the accident "occurred solely as [a] result of [Plaintiff's] own reckless and careless actions and complete disregard for his own safety and of NJ Transit's rules." Mot. at 4. Plaintiff argues that NJT was, indeed, negligent because it had actual knowledge that the seatback could obstruct the door and NJT should have warned its employees if the door was obstructed. Opp. at 19–20.

First, there is a genuine dispute of material fact over whether NJT was or should have been aware of the engineer's seat position on Locomotive 4914 and whether it could have reasonably foreseen the seat's position could cause injury. Adam Panza, who was the assistant manager on the date of the incident, testified and documented in the "Unusual Occurrence Report" that the door to Locomotive 4914 would not open because the engineer's chair was in a reclined position. Ex.[4] 8 at 22:3–5, 24:7–25:12, 28:2–10; Ex. D; Def. RCSMF ¶ 40. NJT's procedures require a safety job briefing so that the crew is alerted of any hazards they may encounter. *See* Ex. F at

---

[4] "Ex." references the exhibits submitted by both parties with their briefing.

Rules 10, 57.[5] NJT also has a policy of placing visual tags on any equipment that could create a hazard. Def. RCSMF ¶ 47. Defendant admits: "Had NJTRO inspected Locomotive 4914, it would have learned that an NJTRO mechanical department employee left the engineer's seatback in a reclining position, which blocked the doorway into the locomotive cab from fully opening." Def. RCSMF ¶ 7. At least one witness, General Foreman Jamar Ingram, testified that the crew should have been notified if the engineer's seat position was reclined and blocking the door. Ex. B at 16:21–17:13. Plaintiff points to testimony that most NJT employees in the MMC knew about the possibility of the seatback obstructing the door, and that unless Plaintiff was "specifically warned about it, he would have no way of knowing this – this condition existed." Ex. I at 28:12–29:23. Finally, Plaintiff's expert testified that an obstruction, such as the engineer's chair in a reclined position, is considered a defect. Ex. 5 at 80:21–81:7 ("[H]aving the seat obstruct the passageway is an indication to me of a defect."). Despite this evidence, Plaintiff testified that he was not warned regarding the seat's position (Ex. 9 at 167:7–168:14; Ex. 18), and the seatback was not "tagged" to identify the obstruction (Ex. 9 at 168:11–14). Castro, who Plaintiff alleges was the supervisor, denied providing any safety briefing (Ex. 14 at 51:23–52:24), and testified that he would not have let his employees leave the engineer's seat in that position (*id.* at 72:12–17). The evidence presented suffices to permit a jury to find that NJT breached its duty; there are genuine disputes of material fact over, for example, whether the seatback's position constituted a defect and whether NJT knew or should have known that its operations were inadequate to protect

---

[5] Rule 10 states in relevant part: "Prior to performing any task requiring coordination with other employees, the employees involved must hold a Safety Job Briefing to ensure all have a clear understanding of the task to be performed and their individual responsibility. The Safety Job Briefing should include the following: . . . . (c) Discussion of potential hazards." Ex. F at 13. Rule 57 states in relevant part: "Immediate supervisor shall: . . . (b) Inform employees of unusual hazards before they start work by performing a Safety Job Briefing." *Id.* at 16.

its employees. *See Urie*, 337 U.S. at 182; *Rogers*, 352 U.S. at 503 ("These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did.").

Second, there is a genuine dispute of material fact as to causation. The evidence suggests a sufficient nexus between NJT's alleged negligence and Plaintiff's injury to satisfy the relaxed standard of proof of causation associated with FELA cases. *See Monheim v. Union R.R. Co.*, 996 F. Supp. 2d 354, 364 (W.D. Pa. 2014). Testimony demonstrates that the engineer's seat in a reclining position potentially blocking the door was a known condition (Ex. I at 28:12–29:23); NJT's policies required a safety briefing (Ex. F at Rules 10 and 57); there is a dispute over whether such safety briefing occurred (Ex. 9 at 167:7–168:14; Ex. 14 at 51:23–52:24); and that had Plaintiff been aware of the hazard, there were other doors he could have chosen to utilize on the locomotive (Ex. I at 28:12–29:5; Ex. 8 at 149:11–20). Given the "unquestionably minimal" burden to prove causation at the summary judgment stage on this claim, that burden is met here. *See Monheim*, 996 F. Supp. 2d at 364; *Kennedy v. Norfolk S. Ry. Co.*, 553 F. Supp. 2d 516, 521 (W.D. Pa. 2008) (explaining that "circumstantial evidence is sufficient" to establish causal relationship).

Third, Defendant can only evade liability if Plaintiff was the *sole* cause of his injury. *See, e.g.*, *Romero v. CSX Transp., Inc.*, No. CIV.A. 06-1783, 2008 WL 5156677, at *3 (D.N.J. Dec. 9, 2008) ("The defense of assumption of risk is completely eliminated."); *Tozzi*, 2023 WL 3614582, at *3 (explaining that contributory negligence does not bar plaintiff from recovering damages on a FELA claim). As discussed above, there are genuine disputes of material fact as to NJT's negligence. Evidence demonstrating that Plaintiff's negligence played any part in his injuries—including whether Plaintiff violated safety rules, had other options to board the train

9

he should have utilized, or could have seen the obstructed seatback through the window of the locomotive—must be submitted to the jury for its determination. Accordingly, summary judgment on this issue is not warranted. *See Porreca v. Nat'l R.R. Passenger Corp.*, No. CIV. A. 98-4137, 1999 WL 199806, at *3 (E.D. Pa. Apr. 7, 1999) (denying summary judgment because "Plaintiff has presented evidence from which a jury could reasonably find that Defendant's negligence caused Plaintiff's injury," and thus disputes over the manner in which an employee performs his job must be submitted to the jury).

The Court finds that Plaintiff has produced sufficient evidence from which a reasonable jury could conclude that the injuries sustained by Plaintiff are the result of NJT's failure to exercise reasonable care to protect its employees. Thus, there are genuine issues of material fact in dispute that preclude the entry of summary judgment and an Order finding Plaintiff negligent as a matter of law (Mot. at 9–10).

### B. LIABILITY UNDER THE FEDERAL LOCOMOTIVE INSPECTION ACT

In order to be liable under the LIA, the locomotive must have been "in use" at the time of the accident. *Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392, 397 n.5 (3d Cir. 2010). The phrase "in use" is not defined in the LIA. Courts often look at the totality of the circumstances, including where the train was located at the time of the accident, the activity of the injured party, and the extent of the planned inactivity of the train. *See McGrath v. Consol. Rail Corp.*, 136 F.3d 838, 842 (1st Cir. 1998); *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980); *Adams v. Consol. Rail Corp.*, No. 93-1160, 1994 WL 383633, at *2–4 (E.D. Pa. July 22, 1994). Where "the facts surrounding the accident are *not in dispute*, whether the train may be deemed to have been 'in use' at the time of the accident . . . is a question of law for a court to decide rather than a question of fact for a jury." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 329 (4th Cir. 1998)

10

(emphasis added); *Angell*, 618 F.2d at 262 ("[S]ince the facts surrounding this issue were *not in dispute*, the application of the Act was a matter of law to be decided by the district court." (emphasis added, internal citation omitted)).

Defendant argues that the LIA does not apply to Plaintiff's claim because Locomotive 4914 was not in use at the time of the accident. Rather, according to Defendant, it was in the midst of being inspected and repaired. Mot. at 8–9. Plaintiff argues that the relevant material facts as to whether Locomotive 4914 was in use are disputed, and thus whether the LIA applies is a question of fact that must be decided by the jury. Additionally, Plaintiff posits that Locomotive 4914 was in use because it was in the process of being placed back into service. Opp. at 29–32.

Here, the Court agrees with Plaintiff that there are genuine disputes of material fact that preclude granting summary judgment. For example, Plaintiff testified that he was moving Locomotive 4914 out of the Locomotive House (where locomotives are inspected and repaired) because it was ready to be placed into service. Ex. 9 at 168:15–172:23.[6] Plaintiff was also injured while performing his duties as a conductor, not while repairing or servicing the locomotives. Defendant, on the other hand, points to evidence that Locomotive 4914 was still undergoing its 92-day inspection and that it was not ready to be in service. *See, e.g.*, Mot. at 9; Reply at 10–13; Ex. 8 at 132:1–133:21; ECF No. 46-4. The caselaw confirms that disputes such as these— including whether the train was ready to be put into service, whether it was still being repaired,

---

[6] Defendant argues that this testimony is inadmissible because Plaintiff's counsel asked him improper leading questions at his deposition. Reply at 11; *see also* Fed. R. Civ. P. 56(c)(2). The Court disagrees that this objection would render all of the relevant testimony inadmissible under Fed. R. Evid. 611(c). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on motions for summary judgment. *Anderson*, 477 U.S. at 255. Finally, as discussed above, Defendant failed to raise this argument in its initial moving brief. *See, e.g.*, *Barna*, 877 F.3d at 146 (refusing to "reach arguments raised for the first time in a reply brief").

and the role Plaintiff was performing when injured—are material to determine whether or not the locomotive was in use.  *See Angell*, 618 F.2d at 262 (locomotive was "in use" at the time of the injury, despite being located on a service track, because repairs had been completed and it was ready to operate); *Deans*, 152 F.3d at 330 (locomotive was "in use" when the train was on a track in preparation for imminent departure and the plaintiff (the conductor) was not involved in the repair or maintenance of the train); *Shaffer v. Union Pac. R.R.*, 923 F. Supp. 167, 169 (D. Or. 1996) (locomotive was "in use" because the "activities of [the plaintiff] came after the excluded activities of inspection, servicing and repair had been completed").  These factual issues must be decided prior to the Court's determination of whether the locomotive was "in use."

Accordingly, NJT's motion for summary judgment is **DENIED.**

V.   **CONCLUSION**

For the reasons set forth above, NJT's motion for summary judgment (ECF No. 42) is denied.  An appropriate Order accompanies this Opinion.

**DATED**:  February 29, 2024

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**